**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROBERT J. HOBART, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:20-cv-2167 |
| | ) | |
| BASF CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |

*PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND*
*REQUEST FOR TRIAL BY JURY*

*I.  INTRODUCTION*

Plaintiff Robert J. Hobart ("Hobart") is pursuing claims under the Americans with

Disabilities Act ("ADA") against his former employer, Defendant BASF Corporation ("BASF").

*II.  FACTUAL ALLEGATIONS*

1.      Mr. Robert J. Hobart ("Hobart") is a resident of Springville, Monroe County,

Indiana.

2.      BASF is a very large, multinational chemical corporation.  It has production

facilities around the world.  BASF's North American headquarters is in Florham Park, New

Jersey.

3.      BASF hired Hobart to serve as one of its Regional Security Managers on or about

March 21, 2016.  Hobart continued in that position until he was wrongfully terminated on

November 21, 2019.

4.      As Regional Security Manager, Hobart was a highly compensated executive with

significant responsibilities.  For example, Hobart's responsibilities included supervision of all

1

security functions at approximately 50 BASF production facilities in Central America, Mexico, Texas, Louisiana, Alabama, Tennessee, Virginia and Michigan.

5.      Hobart was most recently stationed to work for BASF from his home in Springville, Indiana.  His Regional Security Manager position entailed significant domestic and international travel.

6.      At all times, Hobart did good work for BASF and met all of BASF's reasonable expectations.

7.      Hobart's immediate supervisor was Kirsten Meskill, BASF's Director of Corporate Security.  Ms. Meskill worked from BASF's Florham Park, New Jersey headquarters for North American operations.

8.      Hobart is a veteran.  He served in the U.S. Army from June 1983 until he retired and was honorably discharged in November 2003.  His highest rank achieved was E-9.  Hobart served in the Army's Special Forces.  He served his country with distinction in both Afghanistan and Iraq.  He also saw action during the Balkan Conflict in the 1990s.  During his military service, Hobart suffered significant physical injuries, including serious injuries suffered in a helicopter crash and a separate parachuting accident.  Since his discharge, Hobart's Veterans Administration disability rating is 90%.

9.      Hobart's claims arise under the Americans with Disabilities Act (ADA). Certainly stemming from his significant military service, Hobart suffers significantly from physical and mental disabilities.  Hobart has been diagnosed and suffers from chronic neck, shoulder, arm and hand pain and limitations.  Hobart actually just had neck surgery on August 29, 2019 to repair damage and relieve pain in his neck and spine.  Hobart's chronic neck,

shoulder, arm and hand pain and injuries constitute covered disabilities under the ADA, as

Hobart's injuries substantially limit him in multiple major life activities including lifting,

working and performance of manual functions.  Additionally, Hobart has been diagnosed with

significant anxiety and depression, and suffers panic attacks.  Hobart's anxiety, depression and

panic attack conditions substantially limit him in major life activities including concentrating,

sleeping and caring for himself.  That said, Hobart is an executive with a relatively sedentary

job.  He is certainly a qualified individual with disabilities who was able to perform all essential

functions of his Regional Security Director job with BASF, with or without reasonable

accommodation.

      10.    On or about May 17, 2019, Hobart applied and was approved for medical leave

under the Family and Medical Leave Act ("FMLA") and BASF's short term disability program

for his anxiety and panic attacks.  He was approved for FMLA leave and granted BASF's short

term disability.  While on medical leave, Hobart had surgery performed on his neck on August

29, 2019.   His short term disability leave and benefits were extended to give him time to recover

from surgery.

      11.    During his medical leave, Hobart maintained contact with his BASF supervisor

and the BASF leave coordinator.

      12.    In early November 2019, Hobart was released by his physicians to return to work

without restrictions.  On or before November 8, 2019, Hobart advised his BASF supervisors of

his release to return to work and his intention to return to work.  BASF resisted Hobart's efforts

to return to work and began to engage in a series of improper and unlawful medical inquiries,

particularly inquiries about different medications that had been subscribed to Hobart during his

medical leave (including painkillers prescribed right after the neck surgery).  Despite the illegality and the overreaching of BASF's medical inquiries, Hobart provided BASF with significant information from his treating physicians, Dr. Eads (surgeon) and Dr. Truong (treated for anxiety condition).  Hobart even had his physicians provide BASF confirmation that Hobart was no longer taking certain medications that BASF had questioned.  Through this time, Hobart's supervisor, Kirsten Meskill, was communicating with Hobart and acting as though she was glad Hobart was returning to work.

13.     Instead, rather than allow Hobart to return to work, on or about November 14, 2019, BASF told Hobart they were going to briefly transition him to "long term disability benefit status."  BASF next demanded that Hobart submit to a fitness for duty return to work examination which was to be conducted by a physician hired by BASF.  This fitness for duty examination is 1) illegal under the ADA, 2) not based upon any need or business necessity related in any way to Hobart's job duties, and 3) wholly unnecessary, because BASF already had substantial medical opinions from Hobart's treating physicians, both of whom had confirmed that Hobart was returning to work without any medical restrictions.

14.     Again, despite the illegality of BASF's fitness for duty examination demand, Hobart submitted himself to the medical examination by the physician hired by BASF (an urgent care doctor at a Concentra facility near the Indianapolis airport).  BASF's hired physician examined Hobart and reported to Hobart and to BASF that Hobart was fit to return to work without medical restrictions.  This fitness for duty examination occurred on November 18, 2019.

15.     On November 19, 2019, Hobart contacted Ms. Meskill and reported that he was approved to return to work by the BASF physician.  Hobart asked Ms. Meskill for instructions

4

on his return to work.  Meskill told him via text that this was "great news" and thanked him for the update.

16.     On November 21, 2019, a BASF FMLA coordinator contacted Hobart and instructed him to call his boss, Kirsten Meskill, at 1:30 to discuss his return to work instructions. Hobart did as he was told, and participated in the 1:30 phone call with Kirsten Meskill.  During the phone call, attended by Meskill and a BASF Human Resources manager named Lisa Macartel, Hobart was told that he was being terminated because his "position had been eliminated."

17.     This explanation for Hobart's termination is a lie.  BASF fired Hobart because of his disabilities and his history of disabilities.  This is obvious based upon BASF's incredibly invasive inquiries into Hobart's medical condition and medications, the illegal fitness for duty exam and the demand for medical records BASF placed upon Hobart.  This is obvious from timing - particularly as this "elimination" of Hobart's job occurred in the same days Hobart reported his release from medical treatment and plan to return to work.  This is a lie, because BASF was actually very shorthanded at the time with Regional Security Directors.  For example, when Hobart was hired in 2016, BASF had four individuals serving as Regional Security Directors.  That number increased to five, but a number of individuals left those positions and, at the time Hobart was fired, BASF had only two Regional Security Directors - Hobart and one other individual.  Firing Hobart left BASF with only one Regional Security Director for its entire North American operations.  Finally, at the time Hobart was fired because his job was supposedly "eliminated," BASF was advertising and seeking to fill two different and vacant "Area Security Manager" positions.  Those jobs generally paid some less than Hobart was

earning and had fewer responsibilities, but the jobs were still important executive positions and had significant, six figure salaries.  Furthering this point, Hobart directly emailed Kirsten Meskill on November 22, 2019 and asked her, "With my position being eliminated, was there a reason why I was not offered one of the ASM positions you are trying to fill?"  Meskill provided a dishonest response, but would not consider Hobart for placement in either of the two open Area Security Manager positions which were open at the time.  No candidate would have been better qualified to fill either Area Security Manger job than Hobart or would have possessed more knowledge about BASF security needs.

18.     BASF committed three (3) distinct ADA violations.  BASF violated Hobart's rights under the ADA by:

   a.     Subjecting Hobart to illegal and intrusive medical inquiries and an unlawful fitness for duty exam;

   b.     Terminating Hobart from his employment as a Regional Security Director;

   c.     Failure to hire or transfer Hobart to one of two vacant Area Security Director positions for which Hobart was qualified and Hobart sought to fill, particularly when the only excuse BASF gave Hobart for his termination was the "elimination" of his Regional Security Director job.  This failure to hire or transfer includes BASF's open and express refusal to engage Hobart in the ADA-required interactive communication process regarding any reasonable accommodation which would enable him to continue his employment with BASF. Hobart asked Kirsten Meskill in writing to be considered for one of the two vacant Area Security Manager jobs and Meskill told Hobart BASF refused to

6

consider him for either position.

19.     BASF fired Hobart because of his disabilities, his history of disabilities and because BASF did not want to accommodate Hobart.  Hobart was more than qualified to continue his own Regional Security Director position with BASF or to take any other vacant Area Security Manager or similar position available.  Hobart has always had a good work history.  But for Hobart's known disabilities and/or BASF's perception of Hobart as being disabled, Hobart would never have been fired.

20.     As described above, based upon the extensive knowledge BASF supervisors had about Hobart's disabilities and medical problems, along with his need for treatment, Hobart can certainly prove that he is protected under the ADA because BASF regarded him as disabled.

21.     Hobart has been significantly harmed by BASF's discriminatory termination of his employment and its ongoing refusal to reasonable accommodate him by offering a vacant position for which he is qualified.  Hobart is seeking all lost wages and benefits, reinstatement or front pay and benefits, and all compensatory and punitive damages, including compensatory damages for mental and emotional stress and anguish, humiliation, loss of enjoyment of life, career damage, and all pecuniary damages.  Hobart is also seeking payment of all of his reasonable attorney's fees, costs and expenses.

22.     Hobart is a qualified individual with disabilities, but he was and is perfectly capable of performing all essential functions of his former job with BASF or other, open jobs that BASF refused to consider Hobart as a candidate or permitted him to apply for to preserve his employment.

### III.  JURISDICTION AND VENUE

7

23.     This Court has jurisdiction over the subject matter of this complaint pursuant to

28 U.S.C. § 1331 as Hobart's claims under the ADA raise federal questions of law.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because of

the unlawful conduct alleged below was committed in the Southern District of Indiana.  More

specifically, this case is properly assigned to the Indianapolis Division of the U.S. District Court

for the Southern District of Indiana because BASF employed Hobart to work for it from his

Monroe County, Indiana home office.

### IV.  ADMINISTRATIVE PROCEDURES

25.     Hobart has complied with all of the administrative procedures that are conditions

precedent to the filing of this lawsuit.  On August 14, 2020, Hobart's attorney received Hobart's

Notice of Right to Sue from the Equal Employment Opportunity Commission which was dated

August 11, 2020.

### V.  AMERICANS WITH DISABILITIES ACT AMENDMENT ACT OF 2008 CLAIMS

26.     Hobart incorporates herein by reference paragraphs 1 through 25 above.

27.     BASF knowingly and intentionally discriminated against Hobart in violation of

the Americans with Disabilities Act Amendments Act of 2008.

28.     BASF's violations of Hobart's ADA rights included, but are not limited to, the

following:

a.     Subjecting Hobart to illegal and intrusive medical inquiries and an unlawful

fitness for duty exam;

b.     Terminating Hobart from his employment as a Regional Security Director;

c.     Failure to hire or transfer Hobart to one of two vacant Area Security Director

8

positions for which Hobart was qualified and Hobart sought to fill, particularly when the only excuse BASF gave Hobart for his termination was the "elimination" of his Regional Security Director job.  This failure to hire or transfer includes BASF's open and express refusal to engage Hobart in the ADA-required interactive communication process regarding any reasonable accommodation which would enable him to continue his employment with BASF. Hobart asked Kirsten Meskill in writing to be considered for one of the two vacant Area Security Manager jobs and Meskill told Hobart BASF refused to consider him for either position.

29.     BASF is an employer as defined under the ADA, with fifteen or more employees working for it at all times relevant to this cause of action.

30.     Hobart is a qualified individual with a disability who is capable of performing all essential functions of his job or other vacant security manager jobs with BASF, with or without reasonable accommodation.  Hobart is expressly asserting and alleging that his chronic neck, shoulder, arm and hand pain and injuries constitute covered disabilities under the ADA, as Hobart's injuries substantially limit him in multiple major life activities including lifting, working and performance of manual functions.  Additionally, Hobart has been diagnosed with significant anxiety and depression, and suffers panic attacks.  Hobart's anxiety, depression and panic attack conditions substantially limit him in major life activities including concentrating, sleeping and caring for himself.

31.     Additionally, BASF terminated Hobart and discriminated against him based upon BASF's regard of Hobart as being disabled.

9

32.     BASF terminated Hobart rather than engage with him in the interactive

communication process required under the ADA.

33.     BASF discriminated against and terminated Hobart for having engaged in

protected activity, to wit, making known his disabilities, and need to seek treatment that would

entail medical leave (days off from work).

34.     Prior to his termination from employment, Hobart performed his job duties well

and met his employer's reasonable expectations.

35.     Hobart's disabilities improperly motivated BASF's decision to discharge him

from employment.  Such wrongful actions on the part of BASF violate Title I of the Americans

With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42

U.S.C. § 1981a and the Americans With Disabilities Amendments Act of 2008.

36.     BASF failed and refused to make reasonable accommodations to Hobart's known

and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities

Act, 42 U.S.C. § 12112(b)(5)(A).  The effect of BASF's conduct has been to deprive Hobart of

equal employment opportunities and to deprive him of the same rights as are enjoyed by other

citizens.

37.     As a direct and proximate result of BASF's conduct, Hobart has sustained

substantial economic losses, including past and future wage losses, and other economic benefits.

Hobart has also sustained the loss of financial stability, peace of mind and future security, and

has suffered embarrassment, humiliation, career damage, mental and emotional distress,

discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully

ascertained.  Further, as described hereinabove, BASF acted oppressively, maliciously,

fraudulently and outrageously toward Hobart, with conscious disregard for Hobart's known rights and with the intention of causing unjust and cruel hardship to Hobart.  In acting in a deliberate and intentional manner, BASF intended to and did injure and annoy Hobart.  Hobart is seeking punitive damages against BASF for its violations of the ADA.

38.     As a result of BASF's discriminatory practices, Hobart has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert J. Hobart respectfully requests that the Court enter judgment against Defendant BASF Corporation and issue all available relief to him, including, but not limited to, the following:

1.     All damages available under the ADA, including all back pay and benefits, all available compensatory and punitive damages, reinstatement and/or front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2.     Costs;

3.     Pre-judgment interest, if available; and

4.     Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
        Robert P. Kondras, Jr.
        Attorney No. 18038-84
        100 Cherry Street
        Terre Haute, IN 47807

11

(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com

## REQUEST FOR TRIAL BY JURY

Comes now Plaintiff Robert J. Hobart, by counsel, and requests a trial by jury on all

issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP


By   /s/Robert P. Kondras, Jr.
        Robert P. Kondras, Jr.
        Attorney No. 18038-84
        100 Cherry Street
        Terre Haute, IN 47807
        (812) 232-9691
        Facsimile: (812) 234-2881
        kondras@hkmlawfirm.com

12